FILED
SEP 17 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1 Your Name: Daneshea Montanocordoba
2 Address: P.O. Box 5646 Redwood City, CA 94063
3 Phone Number: 424-646-1669
4 Fax Number:
5 E-mail Address: dmmontanocordoba@gmail.com
6 Pro Se Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| Danesha Montanocordoba | Case Number C18-5682 EDL |
|---|---|
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Contra Costa County | DEMAND FOR JURY TRIAL |
| Detective Ann Shiraishi | Yes ☒  No ☐ |
| Deputy T. Jackson | |
| Does 1-20 | |
| Richmond Police Department | |
| Defendants. | |

**PARTIES**

1. Plaintiff. [Write your name, address, and phone number.]

Name: Daneshea Montanocordoba
Address: P.O. Box 5646 Redwood City, CA 94063
Telephone: 424-646-1669

COMPLAINT
PAGE 1 OF 10 [JDC TEMPLATE – Rev. 05/17]

2. Defendant Detective Ann Shiraishi, Badge # 1658, is an officer of the Richmond Police Department.

3. Defendant Deputy T. Jackson is a deputy of the Contra Costa County Sheriff's department.

4. Defendant Contra Costa County is a municipality.

5. Defendants Does 1-20 are deputies or other employees of the Contra Costa County Sheriff's Department who are responsible for the injury claimed in this Complaint. Their true names and identities are not currently known at this time.

## JURISDICTION

6. My case belongs in federal court under federal question jurisdiction because it arises under 42 U.S.C. §1983.

## VENUE

7. Venue is appropriate in this Court because a substantial part of the events I am suing about happened in this district.

## INTRADISTRICT ASSIGNMENT

8. Because this lawsuit arose in Contra Costa County, it should be assigned to the Oakland/San Francisco Division of this Court.

## STATEMENT OF FACTS

9. On the evening of July 14, 2017, I was arrested in Richmond, California.

10. As I was being arrested, I informed the police that my son was present and asked if I could make arrangements for him to be picked up from the police station. Defendant Shiraishi told me that I could make those arrangements once we got to the police station.

11. When I got to the police station, I spoke with Defendant Shiraishi who again confirmed that I could have someone pick up my son. I contacted a friend who agreed to pick him up

and gave my friend's name to Defendant Shiraishi, authorizing the pickup. She confirmed. In fact, she called my friend separately to confirm, and gave him the address of the jail.

12. When I was put into a cell, the police informed me that my son was in a separate room, and that they would be getting him something to eat before my friend, whose name they confirmed, came to pick him up.

13. However, when my friend came to pick up my son a short time later, he called Detective Shiraishi, as she had requested. Detective Shiraishi began questioning him about the reasons why I was arrested. He informed her that he was not there, had been at work, and first heard about the incident when I called to see if he could pick up my son. Contrary to the prior agreement Detective Shiraishi had made with me, she told him that she would not release my son to him—the person I had specifically arranged to pick up and take care of him. Neither Detective Shiraishi nor any other person informed me of this.

14. When a police officer, a white woman who was working in booking, brought me my dinner tray, she informed me that I would not be in much longer because someone was there to bail me out. Several friends tried to bail me out that night but were falsely informed that I was not in custody.

15. Detective Shiraishi contacted CPS, or at a minimum, provided a statement to CPS informing CPS that my son had been left at the scene, while not informing CPS that I had specifically requested to make arrangements for his care, that those arrangements had been confirmed, and that the person I designated to care for him for what should have been a short time in custody had not been allowed to pick up my son.

16. Early the next morning, while I was being transferred to Martinez jail, I became having breathing problems, and a full asthma attack came on by the time we arrived at the jail. In the entryway, I was given an inhaler. I informed them that the type of inhaler they gave me (Abuterol) would not help with the type of symptoms that I have, and that I needed Dulera, a steroid, on an ongoing basis.

17. I was booked into Martinez jail. After an officer placed an ID bracelet on my wrist, I saw that it had the incorrect name, which was not similar to my name. I informed Doe 1, a white

COMPLAINT

PAGE 3 OF 10 *[JDC TEMPLATE – Rev. 05/17]*

female officer in the booking area of this issue. She looked at my bracelet, and I gave her my correct name. She said not to worry about it, that it would be fixed once they transferred me to the female facility.

18. Later that day, before being transferred to a different facility, I had to change locations. The person supervising that location, Doe 2, was a male officer. I informed him that my ID bracelet was incorrect and needed to be changed. He asked my correct name and I told him. He looked at my bracelet and agreed that the name on it was not even similar to my name. I agreed, and asked him to ensure that it would be changed. He agreed and made a joke about how they wanted to make sure they have the right names so people get the correct charges. He assured me that the bracelet and records would be changed.

19. After we were transferred to a Richmond facility, Doe 3, another white woman, I informed that my ID bracelet had someone else's name on it. I gave her my correct name. She did not do anything in response.

20. Next, I informed a male officer, Doe 4, who transferred me from one building to another at the Richmond facility that I had been booked in under the wrong name and that my ID was incorrect. He told me that the name does not matter, that they go by the booking number.

21. Later that day when we were allowed to come outside for exercise, I showed two officers, one female, Doe 5, and one male, Doe 6, my bracelet, and again told them that was not my name. I gave them my correct name.

22. Later that day, I contacted medical team because I had recently had foot surgery that required care, needed my correct asthma medication, and had head injuries from shortly before my arrest. Over the phone, the medical personnel, a male, Doe 7, tried to locate my medical records by searching by my booking number and name. When the booking number on my bracelet and my true name did not match, he was very surprised and confused. He then searched by my social security number, and confirmed my identify using my address and other information. At that point he was able to view my County medical records and see that I had recently had surgery and had asthma. He told me that their system had me booked under the wrong name and said "We gotta get this changed

COMPLAINT

PAGE 4 OF 10 [JDC TEMPLATE – Rev. 05/17]

now." He informed me that he was going to notify other sheriff's department personnel immediately.

23. Not long after I got off the phone with medical, I spoke to yet another officer, Doe 8, and informed him that my name did not match what was on my bracelet, and that I had been booked in under the wrong information. He told me they would change it later.

24. Between Saturday evening and Monday, I spoke to multiple officers, Does 9-20, about when I would be able to leave or see a judge because I had been incarcerated since Friday. Multiple officers checked to see if I had a court date and said I did not and said that I was not going to be released.

25. On Monday afternoon, I was called for a "visit." Defendant Officer T. Jackson, an African-American female came to transport me to this meeting. I informed her that I had been booked under the wrong name, showed her my ID bracelet, and asked how they had been able to locate me under my correct name. I asked when my information would be updated, as I was told it would be. I told her because of this ID issue I had not been able to bail out. I asked her to fix this problem.

26. When I came into the room for the meeting, the woman asked me if I knew where my son was. I informed her he was with my friend, whom I identified my name. She said she didn't know who that was. She told me that she was with CPS and that my son was staying with some woman in Stockton.

27. I was in shock and really upset. For four days I had been thinking that my son was with my friend. In addition to this shock, all of the officers had ignored my repeated requests to change my booking so that I could bail out.

28. Late Monday night, I had an asthma attack. A nurse finally came and did some testing. When I failed those tests, she agreed to order the Dulera that I had been telling them that I needed.

29. Early Tuesday morning, I spoke with a woman, Doe 10, informing her of the ID issue, telling her that I should have been released yesterday, or have gone before a judge. I told her I had been in since Friday, had the wrong name on my ID bracelet, and had been unable to bail out

COMPLAINT

PAGE 5 OF 10 [JDC TEMPLATE – Rev. 05/17]

because of the ID problem. I told her it was very important that I be released because my child had been taken into CPS custody and had a hearing coming up. She said they would look into it.

30. Later Tuesday, I tried to bail out again. The bail bondspeople said I could not bail out because Danesha Montanocordoba was not listed as being incarcerated. The bail bondspeople said they spoke with jail personnel, informing them of my situation, but that the jail personnel were not cooperating.

31. On Wednesday morning, Doe 11, a white woman came calling for Danesha Montanocordoba. I told her that was me, and asked how she was able to locate me since I had been booked under the wrong name and had been unable to bail out due to the ID issue, even though it was day six of being in jail. She ignored me, and told me I had a CPS hearing. On the way to the hearing, I informed the staff transporting me of the same ID issue. They ignored me.

32. Before I had ever been brought before a judge, I was brought into family court. At that hearing, the County informed the court that they needed to continue to hold my son in CPS custody because I was still incarcerated.

33. A few hours after I was returned to jail following the family court hearing, I was released, without charges and without ever having come before a criminal court judge. No charges have been filed.

34. However, CPS proceedings continue, and, with the exception of brief visits, I have been denied companionship with my son since July, 2017.

35. I filed government claims with the City of Richmond and Contra Costa County on January 12, 2018 which were denied.

## CLAIMS

### First Claim

**Violation of 42 U.S.C. §1983 and Fourteenth Amendment Due Process Clause –
Interference with Parent-Child Relationship**

Against Defendant Shiraishi, Defendant Contra Costa County, and Defendant T. Jackson

36. Defendant Shiraishi refused to comply with the agreement she made with me and with my legitimate and reasonable request regarding who would take custody of my son during what

COMPLAINT
PAGE 6 OF 10   [JDC TEMPLATE – Rev. 05/17]

should have been the brief amount of time I was incarcerated. Additionally, she intentionally refused to disclose to CPS that I had made arrangements for my son and falsely suggested to CPS that I had requested that my son be taken into CPS's custody.

37. No later than Monday, July 17, 2017, Defendant T. Jackson knew that I was being held under the wrong name, that the County's incorrect identification was keeping me from being able to bail out, and that the County refused to investigate or update my identifying information.

38. Despite, or perhaps because of this knowledge, and knowing that continued incarceration would result in my continued separation from my son past the first CPS hearing, Deputy Jackson did nothing to investigate my identity and ensure that I was timely released.

39. Upon information and belief, Contra Costa County has a policy or custom of detaining a parent whose child has been temporarily placed in CPS custody past the first CPS hearing, even if detention is no longer reasonable or authorized, so that the County may report to the Court that the parent "remains in custody" and continue to separate the parent and child.

40. Because of this conduct, I have been and continue to be harmed by the improper interference with my relationship with my child.

## Second Claim

## Violation of 42 U.S.C. §1983 and Fourteenth Amendment Due Process Clause – Unreasonable Delay in Processing

### Against Contra Costa County and Does 1-20

41. Defendant Contra Costa County, through its sheriff's department, held me in custody.

42. There was an unnecessary delay in taking me before a judge. California Penal Code section 825 generally provides that a person arrested must be taken before the judge within 48 hours, excluding Sundays and holidays. I was detained for more than five days without being taken before a judge. I was arrested on Friday, July 14, 2017 and was not released until late on Wednesday, July 19, 2017.

43. Based on my communications with each of the individual defendants, they knew, at a minimum, that further investigation into my being held was warranted.

COMPLAINT

PAGE 7 OF 10 [JDC TEMPLATE – Rev. 05/17]

44. Given the number of Contra Costa County employees that wholly disregarded my rights by knowing that I was being detained under an incorrect name and booking number and that I had been detained far longer than the time permitted by California Penal Code section 825 and the due process clause, Contra Costa County has a policy that fails to prevent such violations of law by failing to train its employees regarding the usual and recurring situation of errors in the booking process. The County was deliberately indifferent to the obvious consequences of its failure to train. The County's failure to train was the moving force that caused by injury of prolonged and illegal detention.

45. Defendants' conduct was a substantial factor in causing my harm.

### Third Claim

### False Imprisonment – Unnecessary Delay in Processing/Release

Against Contra Costa County, Defendant T. Jackson, and Does 1-20

46. Defendant Contra Costa County, through its sheriff's department, held me in custody.

47. There was an unnecessary delay in taking me before a judge. California Penal Code section 825 generally provides that a person arrested must be taken before the judge within 48 hours, excluding Sundays and holidays. I was detained for more than five days without being taken before a judge. I was arrested on Friday, July 14, 2017 and was not released until late on Wednesday, July 19, 2017.

48. Based on my communications with each of the individual defendants, who were employees and agents of Defendant Contra Costa County they knew, at a minimum, that further investigation into my being held was warranted.

49. Defendant's conduct was a substantial factor in causing my harm.

//

//

//

COMPLAINT

PAGE 8 OF 10 *[JDC TEMPLATE – Rev. 05/17]*

6. **Demand for Relief**

*State what you want the Court to do for you. For example, depending on which claims you raise, it may be appropriate to ask the Court to award you money or order the defendant to do something or stop doing something. If you are asking for money, you can say how much you are asking for and why you should get that amount.*

1 - Requesting child returned home immediately to mother and CPS case closed.

2 - Requesting financial reimbursement from Richmond Police for child support ordered from Contra Costa County do to CPS case being opened

3 - Requesting Richmond Police submit record phone call I placed 07/14/17 to Micheal Caldwell to arrange pick up for my child.

4 - Requesting Personal Cell phone records of Detective Ann Shiraishi placing phone call to Micheal Caldwell regarding pickup arrangements for child

5 - Requesting Video footage of being detained at RPD from 07/14/17 arrival, til 07/15/17 transfer

6 - Requesting Video footage from Contra Costa Sheriff of 07/15/17 entry to Martinez,

7. **Demand for Jury Trial**

*Check this box if you want your case to be decided by a jury, instead of a judge.*

☒ Plaintiff demands a jury trial on all issues.

*All plaintiffs must sign, date, and print their names at the end of the Complaint. Attach another page if you need to.*

Respectfully submitted,

Date: 09/15/2018    Sign Name: _____

Print Name: Daneshea Montanocordoba

COMPLAINT
PAGE 9 OF 10 [JDC TEMPLATE]

1. CA, jail. 07/15/17 entry to West Contra Costa County Jail in Richmond, CA. And 07/19/17 release from West Contra Costa County Jail.

7- Requesting Contra Costa Sheriff Release records of all medical care and medication orders from 07/15/17 to 07/19/17

8- Daily compensation of $100,000 from Contra Costa Sheriff for dates detained after 72 hours of being held in custody with no charges. Totaling 3 days.

9- Requesting $2,000 hourly from Richmond Police for every day my child has been in CPS custody beginning 07/14/17

10- Requesting $2,000 hourly from Contra Costa Sheriff beginning 07/17/17 for not being released after 72 hours of being in custody with no charges.

11- Requesting all detainees in Contra Costa Sheriff's care be evaluated to make sure they are not intentionally being violated of their rights (example: I would like inmates date of arrival and point of healthcare in order with California Laws)

12- Requesting that Detective Ann Shiraishi is removed from Richmond Police and that all cases handled 24 months (twenty four) prior to, and after 07/14/17 to make sure she did not wrongfully conduct cases that are in violation of California State Law.

COMPLAINT
PAGE 10 OF 10 [JDC TEMPLATE]

rev: 6/2013